# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA  90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

MARK J. GERAGOS          (SBN: 108325)
mark@geragos.com
ALEXANDRA KAZARIAN   (SBN: 244494)
ak@geragos.com
DEV DAS                        (SBN: 320712)
dev@geragos.com

**DHILLON LAW GROUP INC.**

177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
HARMEET K. DHILLON    (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER          (SBN: 231335)
mmeuser@dhillonlaw.com

*Attorneys for Plaintiff,*
BK SALONS LLC, a California Limited Liability Company dba POMP SALON;

## UNITED STATES DISTRICT COURT FOR

## THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BK SALONS LLC**, a California Limited Liability Company dba POMP SALON;<br><br>                    Plaintiff,<br><br>            vs. | **CASE NO.:** 2:21-at-00171<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

**GAVIN NEWSOM**, in his official capacity as Governor of California; **XAVIER BECERRA**, in his official capacity as the Attorney General of California; **ERICA S. PAN, M.D., M.P.H.**, in her official capacity as the Acting State Public Health Officer for the California Department of Public Health, State of California—Health and Human Services Agency,

Defendants.

> *Current lockdown policies are producing devastating effects on short and long-term public health. The results (to name a few) include lower childhood vaccination rates, worsening cardiovascular disease outcomes, fewer cancer screenings and deteriorating mental health- leading to greater excess mortality in years to come, with the working class and younger members of society carrying the heaviest burden.*
> ....
> *The most compassionate approach that balances the risks and benefits of reaching herd immunity, is to allow those who are at minimal risk of death to live their lives normally to build up immunity to the virus through natural infection, while better protecting those who are at highest risk. We call this Focused Protection.*
> ....
> *Those who are not vulnerable should immediately be allowed to resume life as normal ...*
>
> ~ The Great Barrington Declaration – signed by over 51,970 medical and public health scientists and medical practitioners from around the world and across political ideologies.[1]

NOW COMES the above-named Plaintiff, Inc., BK Salons, LLC dba POMP Salon ("Pomp Salon"), by and through their attorneys of record, Geragos & Geragos, APC and Dhillon Law Group, Inc., as and for claims against the above-named

---

[1] Available as of the date of filing at https://gbdeclaration.org/

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

Defendants Gavin Newsom ("Newsom"), in his official capacity as Governor of California; Xavier Becerra ("Becerra"), in his official capacity as Attorney General of California and Erica S. Pan ("Dr. Pan"), M.D., M.P.H., in her official capacity as the Acting State Public Health Officer for the California Department of Public Health, State of California—Health and Human Services Agency (hereinafter collectively referred to as "Defendants"), allege as follows (this "Complaint").

## NATURE OF ACTION

1.     Plaintiff BK Salons LLC dba POMP Salon owns and operates a hair salon in Lincoln Village located at 349 Lincoln Center, Stockton, California 95207. In spite of Defendants' Executive and Regional Orders which mandated the closure of its business, Plaintiff Pomp Salon continued offering its salon services to the general public, prompting a police raid on its business which made national news headlines a few weeks ago[2]. They subsequently shut down their operations. As of January 12, 2021, Newsom lifted[3] his Regional Order in the Sacramento Region, despite the fact that they contradict the mandate set forth in his initial proclamation in early December 2020 regarding ICU-bed capacity in that the Sacramento Region only currently has about 9% ICU bed capacity.

2.     Defendants, in a gross abuse of their power, have seized the Coronavirus pandemic to expand their authority by unprecedented lengths, depriving Plaintiff and all other similarly situated small business owners in California of fundamental rights protected by the U.S. and California Constitutions, including freedom assembly and due process and equal protection under the law. It is this Court's duty to defend these constitutional principles by safeguarding the many rights and liberties of Californians such as Plaintiff that Defendants so brazenly, arbitrarily and capriciously violate.

---

[2] https://ktla.com/news/california/like-it-was-a-drug-raid-stockton-salon-owners-speak-out-against-police-enforcement-visit-due-to-covid-19-violations/
[3] https://www.abc10.com/article/news/health/coronavirus/greater-sacramento-region-stay-home-order/103-18850ada-40d2-4ec2-b143-b0eeafe1340b

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

3.      This Action presents facial and as-applied challenges to the California Department of Public Health, State of California—Health and Human Services Agency's December 3, 2020 Regional Stay At Home Order (the "Regional Order") attached here as "**Exhibit 1**" and the December 6, 2020 Supplemental Regional Order ("Supplemental Order") attached here as "**Exhibit 2**", which violated the constitutional rights of Plaintiff. The Regional Order and the Supplemental Order will be referred to collectively as the "Regional Orders" in this Complaint.

4.      This Action also presents facial and as-applied challenges to the March 12, 2020 Executive Order attached here as "**Exhibit 3**", the March 19, 2020 Executive Order attached here as **"Exhibit 4"** and the Executive Order dated May 4, 2020 that modified the March 19, 2020 Executive Order attached here as **"Exhibit 5"**, all of which violated the constitutional rights of Plaintiff. These three Executive Orders will be referred to collectively as the "Executive Orders" in this Complaint.

5.      Defendants' enforcement of the Regional Orders violates: (I) the Freedom of Assembly Clause of the First Amendment; (II) substantive rights protected by the Due Process Clauses of the Fifth, Eighth and Fourteenth Amendments and (III) the Equal Protection Clause of the Fourteenth Amendment. Defendants' enforcement of the Executive Orders violates substantive and procedural rights protected by the Due Process Clauses of the Fifth and Fourteenth Amendments.

## **JURISDICTION AND VENUE**

6.      This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiff's constitutional rights to freedom of assembly, due process, and equal protection rights under the First and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

7.      The Eastern District of California is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants maintain offices, exercise their authority in their official capacities, and will enforce the Orders; and it is the District in which substantially all of the events giving rise to Plaintiff's claims occurred.

## PARTIES

8.      Plaintiff BK Salons LLC dba POMP Salon is and was a limited liability company organized and authorized to do business and doing business in the State of California. BK Salons LLC owns and operates a hair salon in Lincoln Village located at 349 Lincoln Center, Stockton, California 95207. At all relevant times, BK Salons LLC invested considerable time and resources into ensuring a CDC-compliant workplace for its employees, independent contractors and patrons, including mandatory mask wearing, socially-distanced chair stations, sanitized surfaces after each patron use and temperature checks. In spite of Defendants' Executive Orders and Public Health Orders which mandated the closure of its business, Plaintiff BK Salons LLC continued offering its salon services to the general public, prompting a police raid on its business which made national news headlines a few weeks ago. They subsequently closed their salon.

9.      Defendant Gavin Newsom is made a party to this Action in his official capacity as the Governor of California. The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. Art. V, § 1. Newsom signed both the March 19, 2020 and the May 4, 2020 Executive Orders.

10.     Defendant Xavier Becerra is made a party to this Action in his official capacity as the Attorney General of California. Under California law he is the chief law enforcement officer with supervision over all the execution of laws in the State. Cal. Const. Art. V, § 13.

11.     Defendant Erica S. Pan, MD, MPH is made a party to this Action in her official capacity as the Acting State Public Health Officer for the California Department

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

of Public Health, State of California—Health and Human Services Agency. She signed the at-issue Regional and Supplemental Orders.

12.     Each and every Defendant acted under color of state law with respect to all acts or omissions herein alleged.

## GENERAL FACTUAL ALLEGATIONS

13.     On or about March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of the novel coronavirus, also known as COVID-19.[4]

14.     Since the initial outbreak of COVID-19 in the United States in February and March 2020, Defendants have increasingly restricted—where not outright banned— Plaintiff's engagement in constitutionally protected activities.

15.     For example, California Governor Gavin Newsom issued a "State of Emergency" order on March 4, 2020 (N-25-20) in response to the threat of the spread of COVID-19 throughout California's communities (Exhibit 3). In so doing, Newsom subsequently issued Executive Order N-33-20 on March 19, 2020 (Exhibit 4), which, among other things, mandated that "all residents are directed to immediately heed the current State public health directives."[5]

16.     On or about March 19, 2020, Dr. Sonia Angell, who was then serving as the California State Public Health Officer, acting pursuant to the authority conferred by Governor Newsom's State Order, issued an order which designated a list of "Essential Critical Infrastructure Workers." The Order incorporated by reference the U.S. Government's 16 critical infrastructure sectors[6] whose assets, systems, and networks,

_____

[4] *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, whitehouse.gov (Mar. 13, 2020), available at https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[5] Available at https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf

[6] Including the: (1) Chemical Sector, (2) Commercial Facilities Sector, (3) Communications Sector, (4) Critical Manufacturing Sector, (5) Dams Sector, (6)

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof. The Order provided that "Californians working in these 16 critical infrastructure sectors [would] continue their work because of the importance of these sectors to Californians' health and well-being." All other businesses and organizations were ordered either to cease all operations or to operate under substantial restrictions. Persons not employed in the 16 critical infrastructure areas were required to stay home except as necessary to obtain necessities such food, prescriptions, and healthcare."

17.     Further, Newsom declared that "this Order is being issued to protect the public health of Californians" and that "our goal is simple, we want to bend the curve, and disrupt the spread of the virus." Thereafter, Newsom directed the Office of Emergency Services to "take all necessary steps to ensure compliance with this Order" and that the "Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665."[7]

18.     As a result of the issuance of Newsom's Order, California businesses, such as Plaintiff's which were not part of the 16 "critical infrastructure sectors" described above, were therefore deemed "Non-Essential" businesses, and effectively ordered, under penalty of fine and imprisonment, to shut down.

_____

Defense Industrial Base Sector, (7) Emergency Services Sector, (8) Energy Sector, (9) Financial Services Sector, (10) Food and Agriculture Sector, (11) Government Facilities Sector, (12) Healthcare and Public Health Sector, (13) Information Technology Sector, (14) Nuclear Reactors Materials, and Waste Sector, (15) Transportation Systems Sector, and (16) Water and Wastewater Systems Sector.

[7] Section 8665 of the California Government Code provides that: "Any person who violates any of the provisions of this chapter…shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment."

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

19.     In issuing his March 4, 2020 State of Emergency and March 19, 2020 Stay-at-Home Order, Newsom specified that California's response to the coronavirus pandemic "must be done using a gradual, science-based and data-driven framework" with the objectives of reducing social, emotional, and economic disruptions.

20.     On May 4, 2020, Newsom, again acting pursuant to emergency powers under State Law, issued Executive Order N-60-20 (Exhibit 5). This order permitted businesses to begin reopening in stages, as determined by the State Public Health Officer. It also directed the State Public Health Officer to develop criteria to determine "whether and how … local health officers may … issue directives less restrictive than measures … implemented on a statewide basis pursuant to the statewide directives of the State Public Health Officer." (*See* Exhibit 5).

21.     Newsom has abused his Emergency Powers to give dictatorial power to an unelected, appointed public bureaucrat.

22.     Dr. Pan, an unelected, appointed public bureaucrat is issuing orders that have full force of law. These shutdown orders are not being deliberated and enacted by the legislature nor are they following California law for prorogating administrative regulations (See Cal Govt. Code §11340 *et seq.*).

23.     Under California law, Newsom does have the power to suspend "regulatory statutes" but the California Emergency Service Act does not give him the authority to suspend the California Constitution, laws of general applicability, or rights guaranteed by the U.S. Constitution. (Cal. Govt. Code §8571.)

24.     Federal courts have authority over internal delegations of power between state branches of government when "the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizens are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law[.]" *Gundling v. City of Chicago*, 177 U.S. 183, 188 (1900).

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

25.     Federal courts have authority to review "ordinances, and even legislative enactments … with a view to determining whether the law or ordinance is a lawful exercise of the police power[.]" *Caroline Dobbins v. City of Los Angeles*, 195 U.S. 223, 236 (1904).

26.     On May 7, 2020, State Public Health Officer Dr. Angell issued an order permitting the gradual reopening of businesses and activities in California in stages. The order provided for four stages of gradual reopening, with the final stage, Stage 4, consisting of an end to all stay-at-home orders and a full reopening of businesses. As a result, and on or about the beginning of June 2020, Plaintiff POMP Salon was authorized to operate indoors, albeit at limited capacity.

27.     Thereafter, and on July 13, 2020, the State Public Health Officer issued a further order directing all salons in the State of California, such as Plaintiff, to again cease salon and hair care services. The order applied to salons regardless of ICU bed capacity availability or the number of deaths experienced in each county. As a result of the July 13, 2020 order, Plaintiff was also unable to recoup the cost of implementing the safety measures imposed by the May 7, 2020 order as a condition to offering services to their customers.

28.     On August 28, 2020, Defendant Dr. Pan implemented a statewide order that abandoned the previous, staged re-opening plan promulgated in the May 7, 2020 order and dictated that counties would be classified according to a new plan entitled "Blueprint for a Safer Economy" under which a color-coded "tier" system would be used. Under this new color-coded tiered system, each California county is placed in one of four tiers: Purple, Red, Orange, and Yellow—ranging from most to least restrictive, respectively. Unlike the previous staged reopening plan under the May 7, 2020 order, the current "tier" system under the August 28, 2020 order does not provide ***any*** criteria under which California's businesses and economy would be permitted to fully reopen. Under the respective tiers established pursuant to the August 28, 2020 order, salons, such as Plaintiff's establishment, were required to: (1) cease all indoor salon

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

services (Purple tier); (2) limit indoor salon services capacity to 25% (Red tier); or (3) limit indoor salon services capacity to 50% (Orange and Yellow tiers).

29.    In making public health decisions, it is important for health officials—who are unelected and thus, unaccountable to the general public—to weigh the overall risk of the given disease to the overall benefits of the imposed public health policy.

30.    The Center for Disease Control's ("CDC") provided guidance on how nail, hair and skin care salons can provide indoor services for their customers with relative safety if similar precautionary measures are observed[8], including but not limited to, social distancing, mask wearing, increased sanitation, temperature checks, reduced capacity and increased ventilation.

31.    The CDC includes salons in the second lowest tier of risk and notes that even this risk can be mitigated by reasonable accommodations such as following those guidelines above, and other actions that are well within the capability of County salons.

32.    Many of the contact tracing studies in the scientific literature that document the most common sources of spread of the COVID-19 infection show no evidence suggesting that outdoor dining or indoor salon-based services are more likely to spread the COVID-19 virus than the activities—including private gatherings—that remain permissible at certain levels. Indeed, the Health Director of San Joaquin County recently admitted at a Board of Supervisors meeting on January 5, 2021, that no cases of COVID-19 have been traced back to salons in the County[9].

33.    All the while, so-called "essential" businesses like grocery stores have seen unprecedented rates of coronavirus infections making it likelier than ever that a co-worker or customer could be ill, and that a single case could multiply into dozens.[10]

---

[8] https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/nail-salon-employers.html
[9] http://sanjoaquincountyca.iqm2.com/Citizens/SplitView.aspx?Mode=Video&MeetingID=2386&Format=Agenda (see statement at 3:43:51).
[10] Available as of the date of filing at https://www.latimes.com/california/story/2020-12-20/coronavirus-outbreaks-los-angeles-grocery-stores-essential-businesses?utm_source=sfmc_100035609&utm_medium=email&utm_campaign=News

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

34.     Since issuing his first order in March 2020, Newsom has relied on nothing more than general "field investigations", none of which specifically show a relation of dining at restaurants to the spread of COVOD-19. In addition, and before backtracking, Newsom recklessly maligned the entire salon industry in California by claiming, without evidence, that the first "community spread" of the COVID-19 virus began in a salon[11]. Evidence and analysis available since at least May 2020 further establish that actions at issue in this case—the widespread closure of dining and nail, skin and hair salon-based services—cannot be justified as rationally necessary to protect public health and constitute nothing more than arbitrary and capricious acts.

35.     Nevertheless, and based on the rise of reported COVID-19 cases and hospitalizations that began in mid-November 2020, Newsom announced on December 3, 2020 his newest Regional Stay At Home Order (see Exhibit 1). Coincidentally, Newsom issued the Regional Order the very same day that a state court in Los Angeles County ordered the Los Angeles County Department of Health ("DPH") to provide specific evidence detailing that the closure of outdoor dining under its "County Restaurant Closure Order" was rationally related to halting the spread of COVID-19.

36.     The Regional Order, which took effect on December 5, 2020 and, pertinent to the Southern California Region, is triggered if the Southern California Region's ICU capacity falls below 15%. The Regional Order is effective for three weeks after the trigger. It affects numerous activities and businesses, including Plaintiff's business. In pertinent part, the Order prohibits the operation of nail, hair and skin care services being rendered by salons. The Regional Order will end if the region's ICU capacity projection for four weeks (three weeks after the order) is above or equal to 15%. Conversely, the

---

+Alert%3a+Supermarkets+in+L.A.+County+see+unprecedented+coronavirus+infection+rates+-+00000176-811&utm_term=https%3a%2f%2fwww.latimes.com%2fcalifornia%2fstory%2f2020-12-20%2fcoronavirus-outbreaks-los-angeles-grocery-stores-essential-businesses&utm_id=19649&sfmc_id=2418716

[11] https://www.nbcnews.com/news/us-news/california-gov-newsom-says-community-spread-started-nail-salon-n1203491

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

Order continues if the ICU projection for that period is less than 15%. The assessment will occur on a weekly basis.

37.     As a part of the Regional Order, Dr. Pan, an unelected bureaucrat stated:

"I will continue to monitor the epidemiological data and will modify this Regional Stay-at Home Order as required by the evolving public health conditions. If I determine that it is necessary to change the Terms of this Order, or otherwise modify the Regional Stay-at-Home Order, these modifications will be posted at covid19.ca.gov." ~ Paragraph 8 of Exh. 1.

38.     On December 6, 2020, the Regional Order was triggered by the fact that the Southern California Region had less than 15% ICU capacity, resulting in Plaintiff's closure of its hair, nail and skin care salon after Plaintiff spent upwards of tens of thousands of dollars in complying with the State of California's "Safe Re-Opening Guidelines."

39.     While Defendants rely on a 15% ICU capacity trigger in justifying the effective closures of Plaintiff's business that justification has been undermined by virtue of a recent report issued by the WHO. According to the WHO, widespread "false positive" PCR testing by COVID laboratories has created a situation in which there is now a significantly higher number of false positive COVID tests than initially thought in the community at large[12]. That is, the WHO has recommended that any person who has a positive PCR COVID-19 test who has not presented to a doctor with symptoms of COVID-19 should be retested. In other words, PCR testing is essentially broken and has led to a significant number of "false positive" COVID-19 test as there are major scientific flaws at the molecular and methodological level.

40.     Plaintiff POMP Salon[13] is currently prohibited from operating for their intended purposes in providing hair, nail and skin care services to their clients even

---

[12] https://www.who.int/news/item/20-01-2021-who-information-notice-for-ivd-users-2020-05

[13] As of January 12, 2021, Newsom began allowing businesses, such as POMP Salon, to operate by virtue of lifting his Regional Stay at Home Order for the Sacramento Region.v

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

though the CDC has promulgated guidance for them as a result of COVID-19 that are safely being followed across the U.S. In addition, the CDC has previously endorsed the notion that wearing masks in salons is a safe and effective practice for curbing the spread of COVID-19[14].

41.   Plaintiff is ready willing and able to follow CDC guidance for serving their respective clientel and have in fact been prepared since the start of the pandemic.

42.   On information and belief, Plaintiff has never had a single reported case of coronavirus traced back to their establishment. Plaintiff has at all times done their best to comply with all regulations related to curbing the spread of COVID-19.

43.   During a COVID update on December 8, 2020, broadcasted by the California Department of Public Health, Dr. Mark Ghaly admitted that the State conducted no risk-benefit analysis whatsoever when deciding to implement this new Regional Order, explaining that: "The fact is the transmission is now so widespread across every state that most non-essential activities create a serious risk of transmission…Rather than focus on the sector-by-sector restrictions, the top of our message is, as much as you can, stay at home…"[15]

44.   In that same December 8, 2020 update, Dr. Ghaly addressed the State's rationale of including the ban on outdoor dining in Newsom's newest Regional Order: "The decision to include among other sectors, outdoor dining, and limiting that, turning to restaurants to deliver and provide takeout options instead really has to do with the goal of *trying to keep people at home*, not a comment on the relative safety of outdoor dining."[16] In that same breath of urging the public to stay home, Dr. Ghaly went on to encourage, "Californians are able to do important things… visit a local retailer or

---

[14] https://www.cdc.gov/mmwr/volumes/69/wr/mm6928e2.htm
[15] Mark Ghaly M.D., M.P.H., *12/8/2020: CHHS Secretary Dr. Mark Ghaly Provides Update on COVID-19 in California*, California Department of Public Health, available as of the date of filing at https://www.youtube.com/watch?v=ydrEN5zSS-s.
[16] *Id.*

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

worship the outdoors."[17] Newsom echoed this contradicting message that staying indoors was the goal of lowering the spread of COVID-19 when he tweeted on December 10, 2020, "*Get outdoors with your household safely*. Explore your neighborhood and CA's beauty!...Go to a beach. Take your kids to a playground. Go on a hike. Walk your dog. We can get through this."

45.    While "Essential" businesses continue to operate, and indeed, turn a profit (if not historical profits) during this time of crisis, Plaintiff's "Non-Essential" business was forced to either completely shut down (and then reopen on occasion) or evolve their business models into outdoor services. Defendants' unconstitutionally restrictive Regional Orders have had immense disparate impact across every segment or sector of business in California, particularly on nail, hair and skin care salons. Accordingly, Plaintiff seeks to enjoin the enforcement of the Regional Orders.

46.    Defendants' Regional Orders are not "narrowly tailored" to further any compelling governmental interest. Defendants' Regional Orders are also neither rationally related to the State's interest in curbing the spread of COVID-19. Defendants have granted numerous special exemptions to their bans on public gatherings and conduct, including for purportedly "essential" businesses and activities, provided that social distancing practices are observed. Since these gatherings may be permitted, there can be no doubt that Defendants may, and therefore must, permit Plaintiff to engage in equivalent business activities provided that Plaintiff also adhere to the social distancing guidelines currently in place.

47.    Specifically, the State of California did not initially include Hollywood studios in the list of "Essential Workers" issued in March 2020. But a revised listing, issued in April 2020, declared that workers involved in "the entertainment industries,

---

[17] *Id.*

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

studios, and other related establishments" to be essential "provided they follow COVID-19 public health guidance around physical distancing."[18]

48.     Then, in November 2020, Newsom provided a _special exemption_ to television and film production companies for his earlier limited shelter-in-place order issued before Thanksgiving, which featured a curfew from 10 p.m. to 5 a.m. The workforce on film sets could continue operations throughout the night.[19]

49.     Earlier in December 2020, a central coronavirus testing site at the Union Station building faced a temporary closure to accommodate the filming of a remake of "She's all That" featuring TikTok star Addison Rae. Some 500 appointments were canceled. The negative news cycle resulted in an intervention from the mayor's office to keep the testing site open.[20]

50.     Around the same time, Angela Marsden, the owner of Pineapple Hill, posted a video after her establishment's outdoor dining area had been shut down by virtue of Defendants' Regional Orders. Ms. Marsden's video went viral. In her video, Ms. Marsden displays the hypocrisy, lunacy and total disparity between her own socially distanced outdoor set-up at her establishment juxtaposed by a similarly situated set-up containing outdoor tents and chairs associated with the NBC Universal production set for the series "Good Girls," which was allowed to proceed as essential work.[21]

51.     In addition, hairstylists and makeup artists are explicitly allowed to perform their State Board of Barbering & Cosmetology licensed services in these

---

[18] Available as of the date of filing at:
https://files.covid19.ca.gov/pdf/EssentialCriticalInfrastructureWorkers.pdf
[19] Available as of the date of filing at https://deadline.com/2020/11/entertainment-industry-workers-exempt-from-california-governor-gavin-newsoms-new-stay-at-home-order-1234619285/
[20] Available as of the date of filing at https://www.nytimes.com/2020/12/01/us/virus-testing-Union-Station-Los-Angeles.html

Deleted[A]:

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

Hollywood studios, while those same licensed professionals are prevented from doing the same services in a non-Hollywood studio salon[22].

52.     The disparity in exemptions, such as described herein, is causally related to state officials, such as Newsom, supporting their campaign donors at the expense of small businesses and has nothing to do with science and data.

53.     On November 6, 2020, Newsom attended the infamous dinner at French Laundry for Jason Kinney's birthday in which the bar tab reached $15,000.00 and dinners started at $310.00. Jason Kinney is a lobbyist, whose biggest client is Netflix, which has been allowed to operate during the latest round of forced closures as intensive care hospital capacity has dwindled across the state.[23]

54.     It is no secret that Hollywood lobbyists and insiders have leveraged their industry's economic and political contributions to the state's political power brokers and Democratic machine in order to insulate it from COVID-19 related regulations.

55.     To highlight this issue, just Netflix's quarterly lobbying spending alone nearly tripled as it jumped from $24,437.00 to $70,725.00 a quarter. The jump in spending includes increased fees to Axiom Advisors, the firm founded by Kinney.

56.     Further, the "Big Six" production studios have donated heavily to elected officials and campaigns across California. Netflix and its employees gave $135,950.00; Walt Disney and Co. and its employees gave $183,999.00; Paramount and its employees gave $119,308.00; Sony and its employees gave $27,961.00; Comcast-NBCUniversal and its employees gave $251,588.00; and Warner Bros. and its employees gave $77,050.00.[24]

---

[22] See: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Regional-Stay-at-Home-Order-.aspx; see also: https://covid19.ca.gov/essential-workforce/; see also: https://covid19.ca.gov/industry-guidance/
[23] Available as of the date of filing at https://californiaglobe.com/section-2/gov-newsoms-hollywood-lockdown-exemptions-facilitated-by-lobbyist-pals/
[24] Available as of the date of filing at https://theintercept.com/2020/12/11/hollywood-covid-filming-california-lockdown/

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

57.    The campaign donations were spent as the firms also deployed lobbyists to shape the pandemic rules governing the entertainment industry.[25]

58.    As another example of the elitist exceptionalism underpinning the enforcement of the Regional and Executive Orders, on or about January 6, 2021, a horse auction replete with outdoor dining was held at the Finish Line Bar & Grill, which is situated on Los Angeles County property at the Pomona Fairplex[26].

59.    The hypocrisy of the selective enforcement of the Regional and Executive Orders comes as no surprise. Indeed, in a "PSA" announcement on December 2, 2020, Governor Andrew Cuomo of New York admitted that shutdowns were no longer working: "It's not just mass gatherings causing the spread anymore. The virus is now literally spreading in households. When you eliminate other options for socialization, people will shift their behavior and begin joining together in their homes. We are seeing the impacts of that now, with a significant number of cases originating in households and small gatherings[27].

60.    In addition, and on January 5, 2021, a peer-review article published by several leading and venerated experts at Stanford University concluded that widespread lockdowns do not work for curbing the spread of COVID-19. The researchers concluded that "we fail to find strong evidence supporting a role for more

_____

[25] Mercury Public Affairs, a bipartisan lobbying firm that features former Assembly Speaker Fabian Nuñez and former LA Mayor Antonio Villaraigosa as partners, is currently registered to lobby LA officials on filming issues on behalf of both Comcast-NBCUniversal and the Motion Picture Association. Tracy Arnold, Newsom's chief deputy cabinet secretary, previously served as partner at Mercury Public Affairs. Paramount Pictures' lobbyist Greg Campbell previously served as chief of staff to former Assembly Speaker John Pérez. The disclosure for his firm shows that Campbell lobbied the administration on the essential worker memorandum from the governor's economic affairs office earlier this year. Campbell jointly serves clients through a partnership with a lobbyist named Jim DeBoo. That relationship may serve him well. On Wednesday, DeBoo was announced as Newsom's new chief of staff to replace outgoing chief of staff Ann O'Leary. Available as of the date of filing at https://theintercept.com/2020/12/11/hollywood-covid-filming-california-lockdown/

[27] https://www.governor.ny.gov/news/governor-cuomo-releases-new-psa-highlighting-dangers-covid-19-transmission-through-living-room

Deleted[A]:

17

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

restrictive [non-pharmaceutical interventions] measures in the control of COVID in early 2020". The researchers also observed that "while small benefits cannot be excluded, we do not find significant benefits on case growth of more restrictive [non-pharmaceutical interventions]. Similar reductions in case growth may be achievable with less restrictive interventions." [28]

61.     Plaintiff has standing to bring this lawsuit since they are aggrieved in fact businesses that are the subject of enforcement of the overbroad and unconstitutional Regional Orders, which have the effect of forcing Plaintiff to bear a public burden by virtually eviscerating the ability to operate their businesses.

62.     Unless and until injunctive relief is granted, Plaintiff will continue to suffer irreparable harm for which they are left without an adequate remedy at law, in that they can be subject to criminal cases (i.e. misdemeanor citations and fines), or have their utilities shut off by the DWP based on the enforcement of the Regional Orders by their local Sheriff's Department. Newsom has made it a point to "prosecute" and "fine" all non-conforming "Non-Essential" businesses that refuse to close their doors and shut down their lawful business operations. This was underscored by the notorious armed police raid on POMP Salon's stylists and customers. On, information and belief, the State has even gone so far as to threaten criminal prosecutions, including murder charges, for any non-compliant, "non-essential" businesses.

## CLAIMS

### FIRST CLAIM FOR RELIEF

### Due Process Clauses of Fifth and Fourteenth Amendments to U.S. Constitution

### (42 U.S.C. § 1983)

### (*By Plaintiff against all Defendants*)

63.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

---

[28] https://onlinelibrary.wiley.com/doi/pdf/10.1111/eci.13484

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

64.     The Blueprint for a Safer Economy and the Regional Orders, and Defendants' enforcement thereof violate the Due Process Clauses of the Fifth and Fourteenth Amendments, both facially and as-applied to Plaintiff.

65.     The Due Process Clauses of the 5th and 14th Amendment provides, in pertinent part, that: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

66.     As set forth herein, Defendants' Orders have had a disparate impact on Plaintiff and have unfairly targeted Plaintiff's business, specifically their ability to earn a living by conducting their nail, hair, and skincare services, despite the total lack of scientific evidence or data to support the implementation of the Orders as applied to Plaintiff. As such, Plaintiff has been deprived of their Constitutionally protected liberties and rights.

67.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

68.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

69.     Plaintiff has found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**

**Equal Protection Clause of Fourteenth Amendment to U.S. Constitution**

**(42 U.S.C. § 1983)**

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

(*By Plaintiff against all Defendants*)

70.    Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

71.    The Blueprint for a Safer Economy and the Regional Orders, and Defendants' enforcement thereof violate the Fourteenth Amendment, both facially and as-applied to Plaintiff. The Fourteenth Amendment of the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Equal protection requires the state to govern impartially—not draw arbitrary distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objection.

72.    Defendants intentionally and arbitrarily categorize individuals, businesses and conduct as either "essential" or "non-essential." Those persons or businesses classified as "essential," or as participating in essential services, are permitted to go about their business and activities provided certain social distancing practices are employed. Those classified as "non-essential," or as engaging in non-essential activities (such as Plaintiff's business), are required to heed the State's directives and adjust and/or shut down aspects of their businesses—including the entirety of their operations.

73.    Strict scrutiny under the Equal Protection Clause applies where, as here, the classification impinges on a fundamental right, including the right to assembly, the right to travel, among others.

74.    Defendants cannot satisfy strict scrutiny, because their arbitrary classifications are not narrowly tailored measures that further compelling government interests, for the reasons stated above.

75.    Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

76.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

restraining enforcement of the Orders.

77.     Plaintiff has found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**THIRD CLAIM FOR RELIEF**

**Due Process Clause of Fifth and Fourteenth Amendment to U.S. Constitution**

**(42 U.S.C. § 1983)**

(*By Plaintiff against all Defendants*)

78.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

79.     The Executive Orders and Defendants' enforcement thereof violate the substantive and procedural aspects of the Due Process Clauses of the Fifth and Fourteenth Amendments, both facially and as-applied to Plaintiff.

80.     The Due Process Clause of the 14th Amendment provides, in pertinent part, that: "No State shall … deprive any person of life, liberty, or property, without due process of law[.]"

81.     The Due Process Clause of the 5th Amendment provides in pertinent part that: "No person shall be … deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

82.     As set forth herein, Defendants' Executive Orders have unlawfully violated Plaintiff's procedural due process rights by delegating authority to an unelected, appointed bureaucrat who is exercising this power to deprive Plaintiff from being able to lawfully operate their businesses.

83.     Procedural due process "protects rights created by state law and guarantees that no significant deprivation of life, liberty or property will take place until notice has been provided and the individual has a meaningful opportunity to be heard." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

84. Defendants also have violated Plaintiff's procedural due process rights by ignoring California law as to the promulgation of administrative regulations as set forth in the California Administrative Procedures Act (Cal. Gov. Code §11340 *et. seq.*), including but not limited to the procedures for enacting emergency regulations (Cal. Gov. Code §11346.1).

85. "No right granted or secured by the Constitution of the United States can be impaired or destroyed by a state enactment, whatever may be the source from which the power to pass such enactment may have been derived." *Connolly v. Union Sewer Pipe Co.*, 184 U.S. 540, 558 (1902).

86. The Due Process clause "forbids the government to infringe [on] fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotations omitted).

87. This applies to "fundamental rights and liberties which are deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *Chavez v. Martinez*, 538 U.S. 760, 775 (2003) (internal quotations and citations omitted) (*partially overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)).

88. Substantive due process "includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997) (citation omitted).

89. It protects—in addition to all the enumerated freedoms in the Bill of Rights—a wide array of liberties.

90. Citizens have a fundamental right to be free from confinement without due process of law. *Hamdi v. Rumsfeld*, 542 U.S. 507, 531 (2004).

91. It is self-evident that the right to freely come and go from one's home is a fundamental right. *See Aptheker,* 378 U.S. at 520.

92. The "involuntary confinement of an individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law."

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

*Connor v. Donaldson*, 422 U.S. 563, 580 (1975). Also, any "confinement must cease when those reasons [giving rise to it] no longer exist." *Id*.

93.     Quarantine laws may be permitted as to infected individuals, but not the public at large. *Robinson v. State of California*, 370 U.S. 660, 666 (1962).

94.     A quarantine law that banned introduction of cattle into a state for several months of the year regardless of whether the cattle were diseased or not was held to be unconstitutional. *Railroad Company v. Husen*, 95 U.S. 465, 473 (1877).

95.     Both the Executive Orders and the Health Orders mandate that Californians stay at home and shut down their "non-essential" businesses.

96.     Both the Executive Orders and the Health Orders violate Plaintiff's constitutional rights to liberty.

97.     The State Order is tantamount to a state-wide confinement of most Californians, regardless of whether they are infected with COVID-19.

98.     Unless enjoined, Defendants will act under color of state law to deprive Plaintiff of their right to liberty as protected by the Due Process Clause.

99.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

100.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

101.   Plaintiff has found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**FOURTH CLAIM FOR RELIEF**

**EXCESSIVE FINES / CRUEL AND UNUSUAL PUNISHMENT**

**(42 U.S.C. § 1983)**

102.   Plaintiff incorporates by reference the allegations in the preceding

23

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

paragraphs, as if fully set forth herein.

103.   Plaintiff's principals, employees and independent contractors face a possibility of incarceration in jail plus a fine plus for engaging in the so-called "non-essential" business activities if they elect to ignore Defendants' Orders. In addition, a well-developed body of research demonstrates that involuntary employment is linked to a host of serious adverse health effects, including a greatly increased risk of early death. Indeed, the relationship between unemployment and poor health has been well documented[29].

104.   Studies have further established that adverse health effects and unemployment are not merely correlated, but rather that diminished mental and physical health is *caused by* unemployment. One study found that "higher levels of depression are a result of unemployment[30]." Another study observed evidence supporting a causal explanation for the association between unemployment and mortality[31]. A third study found that "the health deterioration from unemployment is likely to be large," and

---

[29] Pharr et al., *The Impact of Unemployment on Mental and Physical Health, Access to Health Care and Health Risk Behaviors* (Dec. 25, 2011) International Scholarly Research Notices 1, 1 https://bit.ly/3qt9aG3 [as of Jan. 18, 2021] (hereafter Pharr).) "Unemployment has an adverse effect on health," which is "still demonstrable when social class, poverty, age and pre-existing morbidity are adjusted for." Wilson & Walker, *Unemployment and health: A review* (1993) 107 Pub. Health 153, abstract http://bit.ly/35NdVT1 [as of Jan. 18, 2021].) "The unemployed tend to have higher levels of impaired mental health including depression, anxiety, and stress, as well as higher levels of mental health hospital admissions, chronic disease . . . and premature mortality." (Pharr, at p. 1 http://bit.ly/39jZfeZ; see Linn et al., *Effects of Unemployment on Mental and Physical Health* (1985) 75 Am. J. of Pub. Health 502, 502 https://bit.ly/3i24lAt [as of Jan. 18, 2021].) "Unemployment is associated with unhealthy behaviors such as increased alcohol and tobacco consumption and decreased physical activity," while employment is correlated with "better health, improved self-confidence, self-esteem, and happiness." (Pharr, at p. 1 http://bit.ly/39jZfeZ.)

[30] Pharr, supra, at p. 1 http://bit.ly/39jZfeZ.

[31] (Clemens et al., *What is the effect of unemployment on all-cause mortality? A cohort study using propensity score matching* (2015) 25 European J. of Pub. Health 115 https://bit.ly/3shFYmU [as of Jan. 18, 2021].)

24

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

estimated "an almost 10% worse health (in absolute terms) from being unemployed compared to being employed[32]." This third study noted other research findings that unemployment has a negative health effect that extends beyond the period of unemployment, and concluded that unemployment is "a public health problem."

105.   With respect to the implementation of Newsom's latest Regional Orders, Defendants offered no explanation whatsoever to justify the massive social, economic and health costs to Plaintiff and their business, despite Plaintiff's willingness and ability to operate their respective businesses in compliance with CDC-related guidelines.

106.   It is unconscionable that Plaintiff and their employees and independent contractors could, in perpetuity, (as Defendants' Orders have no sunset), face ruinous fines and months of incarceration for attempting to earn a living when there are zero factual or scientific bases that exist so as to support the notion that Plaintiff's business is responsible for the spread of COVID-19.

107.   The Excessive Fines Clause "was taken verbatim from the English Bill of Rights of 1689," *United States* v. *Bajakajian*, 524 U.S. 321, 335 (1998), which itself formalized a longstanding English prohibition on disproportionate fines. The Charter of Liberties of Henry I, issued in 1101, stated that "[i]f any of my barons or men shall have committed an offence he shall not give security to the extent of forfeiture of his money, as he did in the time of my father, or of my brother, but *according to the measure of the offence so shall he pay* . . . ." Sources of English Legal and Constitutional History ¶ 8, at 50 (M. Evans & R. Jack eds. 1984) (emphasis added). Expanding this principle, Magna Carta required that "amercements (the medieval predecessors of fines) should be proportioned to the offense and that they should not deprive a wrongdoer of his livelihood," *Bajakajian*, 524 U.S. 335. "A free man shall be amerced for a small fault only according to the measure thereof, and for a great crime according to its magnitude,

---

[32] (Norström et al., *Does unemployment contribute to poorer health-related quality of life among Swedish adults?* (2019) 19 BMC Pub. Health 1, 1 https://bit.ly/38Mcbv8 [as of Jan. 18, 2021].)

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

saving his position; and in like manner, a merchant saving his trade, and a villein saving his tillage, if they should fall under Our mercy." Magna Carta, ch. 20 (1215), in A. Howard, Magna Carta: Text & Commentary 42 (rev. ed. 1998). *Timbs v. Indiana*, 139 S. Ct. 682, 693 (2019).

108.   Here, and because Defendants' underlying Orders are arbitrary and capricious and lack no rational basis with respect to their stated purposes (i.e. to curb the spread of COVID-19) as applied to Plaintiff's business, the punishment set forth in these Orders for non-compliance is wholly unreasonable and indeed cruel.

109.   Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to their rights unless Defendants Orders are restrained.

110.   Plaintiff has found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## FIFTH CLAIM FOR RELIEF

### Violation of First Amendment Freedom of Assembly Clause
### (42 U.S.C. § 1983)
*(By Plaintiff against all Defendants)*

111.   Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

112.   The Blueprint for a Safer Economy and the Regional Orders, and Defendants' enforcement thereof violates the First Amendment, both facially and as-applied to Plaintiff. The First Amendment of the Constitution protects the "right of the people peaceably to assemble." The Freedom of Assembly Clause was incorporated against the states in *De Jonge v. Oregon*, 299 U.S. 353 (1937).

113.   "The right of free speech, the right to teach, and the right of assembly are, of course, fundamental rights." *Whitney v. California*, 274 U.S. 357, 373 (1927). When a government practice restricts fundamental rights, it is subject to "strict scrutiny" and

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

can be justified only if it furthers a compelling government purpose and, even then, only if no less restrictive alternative is available. *See, e.g.*, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16-17 (1973); *Dunn v. Blumstein*, 405 U.S. 330 (1972).

114.   By denying Plaintiff, POMP Salon the ability to conduct their nail, hair and skin care services through their salons, which not only previously complied with the State of California's Orders, but also complies with the CDC guidelines as set forth herein, Defendants are in violation of the Freedom of Assembly Clause.

115.   Defendants cannot meet the no-less-restrictive-alternative test. The CDC's social distancing guidelines are appropriate to limit the spread of COVID-19. Imposing more restrictive requirements that target salon establishments such as those of the Plaintiff, while at the same time allowing the entertainment industry, major retailers, grocery stores, marijuana dispensaries and others to operate indoors or outdoors is not the least restrictive means of achieving Defendants' public safety goals.

116.   Requiring Plaintiff to abstain from providing nail, hair and skin care services, despite substantial modifications to their existing safety protocols to satisfy the public health interests at stake, violates Plaintiff's Constitutional right to peaceably assemble.

117.   Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders as applied to Plaintiff.

118.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

119.   Plaintiff has found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

A.      An order and judgment declaring that the Regional Orders and the Blue Print for A Safer Economy, facially and as-applied to Plaintiff, violated the First, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution.

B.      An order and judgment declaring that the Executive Orders—N-25-20, N-33-20 and N-60-20—facially and as-applied to Plaintiff, violated the Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution.

C.      An order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing the Blue Print for a Safer Economy Regional Orders;

D.      An order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing the Executive Orders;

E.      For attorneys' fees and costs;

F.      Such other and further relief as the Court deems appropriate and just.

Date: February 26, 2021                    **GERAGOS & GERAGOS, APC**


By: _/s/ Mark J. Geragos_
MARK J. GERAGOS (SBN: 108325)
mark@geragos.com
ALEXANDRA KAZARIAN (SBN: 244494)
ak@geragos.com
DEV DAS (SBN: 320712)
dev@geragos.com


**DHILLON LAW GROUP INC.**


By:  _/s/ Harmeet K. Dhillon_

28

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com


*Attorneys for Plaintiff,*
BK SALONS LLC, a California Limited
Liability Company dba POMP SALON;

29

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF