1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   BK SALONS, LLC, a California        No.  2:21-cv-00370-JAM-JDP
     Limited Liability Company dba
12   POMP SALON,

13              Plaintiff,              **ORDER GRANTING DEFENDANTS'
                                        MOTION TO DISMISS WITH PREJUDICE**
14        v.

15   GAVIN NEWSOM, in his official
     capacity as Governor of
16   California, et al.,

17              Defendants.

18

19        BK Salons, LLC ("Plaintiff") owns and operates a hair salon

20   in Stockton, California impacted by State and Regional Public

21   Health Orders enacted to stop the spread of COVID-19.  Compl.

22   ¶ 1, ECF No. 1.  Plaintiff filed this Section 1983 action against

23   Gavin Newsom, Rob Bonta[1], and Erica S. Pan ("Defendants") in

24   their official capacities as Governor, Attorney General, and

25   Acting State Public Health Officer.  Id. ¶¶ 6, 9-11.  Plaintiff

26

27   ───────────────
     [1] Rob Bonta was appointed Attorney General of California and has
     been substituted for former Attorney General, Xavier Becerra,
28   pursuant to Fed. R. Civ. P. 25(d).

                                    1

1   asserts five federal constitutional claims: (1) a substantive due

2   process claim under the Fifth and Fourteenth Amendments, (2) an

3   equal protection claim under the Fourteenth Amendment, (3) a

4   procedural due process claim under the Fifth and Fourteenth

5   Amendments, (4) an excessive fines / cruel and unusual punishment

6   claim under the Eighth Amendment, and (5) a freedom of assembly

7   claim under the First Amendment.  Id. ¶¶ 63-119.  Plaintiff seeks

8   declaratory and injunctive relief.  Id. at 28.

9        Defendants move to dismiss the action.[2]  Mot. to Dismiss

10  ("Mot."), ECF No. 9-2.  Plaintiff filed an opposition.  Opp'n,

11  ECF No. 11.  Defendants replied.  Reply, ECF No. 13.

12  Additionally, the parties submitted supplemental briefs on the

13  issue of mootness.  See Defs.' Supp. Brief, ECF No. 18; Pl.'s

14  Supp. Brief, ECF No. 19.

15       This Court has previously addressed several constitutional

16  challenges arising out of the COVID-19 pandemic.  See Excel

17  Fitness v. Newsom, No. 2:20-cv-02153-JAM-CKD, 2021 WL 795670

18  (E.D. Cal. March 2, 2021); Givens v. Newsom, No. 2:20-cv-00852-

19  JAM-CKD (E.D. Cal. 2020); Cross Culture Christian Ctr. v. Newsom,

20  No. 2:20-cv-00832-JAM-CKD (E.D. Cal. 2020); Best Supplement

21  Guide, LLC, v. Newsom, No. 2:20-cv-00965-JAM-DKC (E.D. Cal.

22  2020).  Each time, the Court has emphasized that the pandemic

23  "context matters because the Public Health Orders being

24  challenged in these lawsuits have been enacted to stop the spread

25  of COVID-19 and keep Californians safe.  As such, not every harm

26

27  [2] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28  scheduled for June 22, 2021.

1   flowing from these Orders can be legally cognizable, let alone
2   rise to the level of a constitutional violation." Excel Fitness,
3   2021 WL 795670 at *1.  So too here.

4        In granting Defendants' motion to dismiss, this Court joins
5   a growing list of courts in this state that have dismissed
6   substantially identical claims challenging the same state COVID-
7   19 Orders.  See e.g. Mission Fitness Center, LLC v. Newsom, 2:20-
8   cv-09824-CAS-KSx, 2021 WL 1856552 (C.D. Cal. May 10, 2021)
9   (granting motion to dismiss in challenge by gym-owners);
10  MetroFlex Oceanside LLC v. Newsom, No. 20-cv-2110-CAB-AGS, 2021
11  WL 1251225 (S.D. Cal. Apr. 5, 2021) (granting motion to dismiss
12  in challenge by gym-owners); Culinary Studios, Inc. v. Newsom,
13  No. 1:20-cv-1340-AWI, 2021 WL 427115 (E.D. Cal. Feb. 8, 2021)
14  (granting motion to dismiss in challenge by a group of
15  restaurant, gym, and other business owners).

16                          I.   BACKGROUND

17       In March 2020, Governor Newsom began issuing stay-at-home
18  orders to combat the spread of COVID-19.  Compl. ¶¶ 4, 15-19; see
19  also Governor Newsom's March 12, 2020 Executive Order, Ex. 3 to
20  Compl.; Governor Newsom's March 19, 2020, Stay-at-Home Order, Ex.
21  4 to Compl; Governor Newsom's May 4, 2020 Executive Order, Ex. 5
22  to Compl.  Under these orders, Plaintiff's salon, Pomp Salon, was
23  required to close from March to early June 2020.  Compl. ¶¶ 1,
24  18, 26.  In June 2020, Plaintiff was authorized to reopen and
25  operate indoors at limited capacity; however, Plaintiff incurred
26  significant costs to operate in compliance with Defendants'
27  Orders.  Id. ¶¶ 26-27.  On July 13, 2020, the State once again
28  mandated the closure of salon and hair care services.  Id. ¶ 27.

                                 3

The public health orders changed again in August 2020 with the enactment of the Blueprint for a Safer Economy and its color-coded tier system.  Id. ¶ 28.  Under this tier system, salons, including Plaintiff's, were required to: (1) cease all indoor salon services in the purple tier; (2) limit indoor salon services capacity to 25% in the red tier; or (3) limit indoor salon services to 50% in the orange and yellow tiers.  Id.

On December 3, 2020, due to rising COVID-19 cases and hospitalizations, Governor Newsom announced regional stay-at-home orders.  Id. ¶¶ 35-39[3]; see also State's December 3, 2020 Regional Stay at Home Order, Ex. 1 to Compl; State's December 6, 2020 Supplemental Regional Order, Ex. 2 to Compl.  Under these orders, Plaintiff was required to close again.  Compl. ¶ 40. Plaintiff, however, continued to offer its salon services to the public in violation of these orders.  Id. ¶¶ 1, 8.  As a result, Plaintiff was subject to an enforcement action that made national news.  Id. ¶ 1 n.2.

On January 12, 2021, the Regional Order for the Sacramento Region was lifted, and Plaintiff resumed operations.  Id. ¶ 40 n.13.

## II.  OPINION

### A.  Request for Judicial Notice

Defendants request the Court take judicial notice of seven exhibits: (1) the Centers for Disease Control and Prevention's ("CDC") COVID Data Tracker and its publicly reported data as of

---

[3] The allegations in these paragraphs address the Regional Order for the "Southern California Region," although Pomp Salon is not located in that region.  See Compl. ¶¶ 35-38.

4

1    April 22, 2021; (2) the State's "Tracking COVID-19 in

2    California" Dashboard and its publicly reported data as of April

3    22, 2021; (3) the CDC's October 5, 2021, Science Brief; (4) the

4    State's Beyond the Blueprint for a Safer Economy Memorandum;

5    (5) the State's Blueprint for a Safer Economy Framework as of

6    April 27, 2021; (6) the State's Blueprint for a Safer Economy

7    Activity and Business Tiers as of April 19, 2021; and (7) the

8    State Blueprint Data Chart as of April 27, 2021.  <u>See</u> Defs.'

9    Req. for Jud. Notice ("RJN"), ECF No. 9-1.  Plaintiff challenges

10   this request.  <u>See</u> Opp'n at 3-9.

11       After reviewing each exhibit and considering Plaintiff's

12   arguments in opposition, the Court finds all exhibits to be

13   matters of public record and therefore proper subjects of

14   judicial notice.  Accordingly, the Court GRANTS Defendants'

15   Request for Judicial Notice.  However, the Court takes judicial

16   notice only of the <u>existence</u> of these documents and declines to

17   take judicial notice of their substance, including any disputed

18   or irrelevant facts within them.  <u>Lee</u>, 250 F.3d at 690; <u>see also</u>

19   <u>Gish v. Newsom</u>, No. EDCV 20-755-JGB(KKx), 2020 WL 1979970 at *2

20   (C.D. Cal. April 23, 2020) (recognizing courts judicially notice

21   only "the contents of the documents, not [the] truth of those

22   contents").

23       B.   <u>Mootness</u>

24       On June 15, 2021, California fully reopened its economy and

25   moved beyond the Blueprint for a Safer Economy.  <u>See</u> Beyond the

26   Blueprint for Industry and Business Sectors Effective June 15,

27   <u>available at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/</u>

28   <u>COVID-19/Beyond-Blueprint-Framework.aspx</u>.  In light of this

1   directive, the Court ordered supplemental briefing as to whether
2   the case or some of the issues raised by the litigation were
3   moot.  See Supp. Briefing Order, ECF No. 17.

4       Defendants contend the case should be dismissed as moot
5   since the "entire legal framework [] has now been dismantled
6   because COVID-19 conditions in the State have improved so
7   significantly."  Defs.' Supp. Brief at 3.  Defendants further
8   argue that neither the voluntary cessation exception to mootness
9   nor the capable of repetition yet evading review exception apply
10  here.  Id. at 5-9.  Plaintiff counters that the capable of
11  repetition yet evading review exception does apply and that the
12  case is not moot under the Supreme Court's recent decision in
13  Uzuegbunam v. Preczewski, 141 S.Ct. 792 (2021).  Pl.'s Supp Brief
14  at 3-8.  As an initial matter, Plaintiff's Uzuegbunam argument
15  fails because as Plaintiff concedes, it has "not asked for
16  damages in [the] Complaint."  Id. at 6.  Uzuegbunam, a decision
17  concerning nominal damages, is inapposite because nominal damages
18  have not been pled here in the operative complaint.  See
19  generally Compl.  That Plaintiff intends to file a motion to
20  amend the complaint in light of Uzuegbunam, see Pl.'s Supp. Brief
21  at 6, does not change this analysis.

22      "A case becomes moot—and therefore no longer a 'Case' or
23  'Controversy' for purposes of Article III—when the issues
24  presented are no longer 'live' or the parties lack a legally
25  cognizable interest in the outcome."  Rosebrock v. Mathis, 745
26  F.3d 963, 971 (9th Cir. 2014) (internal citations omitted).
27  However, voluntary cessation of challenged conduct does not
28  necessarily render a case moot.  Id.  This is because "dismissal

1  for mootness would permit a resumption of the challenged conduct

2  as soon as the case is dismissed." Id. Courts presume that a

3  government entity is acting in good faith when it changes its

4  policy. Id. But courts "are less inclined to find mootness

5  where the new policy could be easily abandoned or altered in the

6  future." Id. at 972 (internal citation omitted). Finally, the

7  party asserting mootness bears a "heavy burden" to show that "the

8  challenged conduct cannot reasonably be expected to reoccur."

9  Id. at 972.

10      Here, Defendants have not met their burden to show the case

11  is moot. Defendants' response to this unprecedented pandemic has

12  necessarily been ever-evolving. But its ever-evolving nature

13  gives the Court pause. The Delta variant is rising in California

14  in spite of the increasing number of vaccinated Californians.

15  See https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-

16  19/COVID-Variants.aspx (last accessed July 12, 2021); see also

17  Pl.'s Supp Brief at 4. It is therefore conceivable that

18  Defendants may need to reimpose restrictions. Indeed, as

19  Plaintiff emphasizes, Governor Newsom's recent public comments

20  confirm as much. Pl.'s Supp. Brief at 4-5. For these reasons,

21  Defendants have not shown that "the challenged conduct cannot

22  reasonably be expected to reoccur." Rosebrock, 745 F.3d at 972.

23      Because the voluntary cessation exception to mootness

24  applies[4], the case is not moot.

25  ///

26

27  _____

    [4] As the Court finds the voluntary cessation exception applies,
    it does not reach the issue of whether the capable of repetition
28  yet evading review exception also applies.

7

1        C.    12(b)(6) Standard

2        A Rule 12(b)(6) motion challenges the complaint as not

3   alleging sufficient facts to state a claim for relief.  See Fed.

4   R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under

5   12(b)(6)], a complaint must contain sufficient factual matter,

6   accepted as true, to state a claim to relief that is plausible on

7   its face." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (internal

8   quotation marks and citation omitted).  In considering a motion

9   to dismiss for failure to state a claim, the court accepts as

10  true the allegations in the complaint and construes the pleading

11  in the light most favorable to the party opposing the motion.

12  Lazy Y Ranch LTD. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

13       D.    12(b)(6) Analysis

14       As an initial matter, Plaintiff dedicates much of its

15  opposition to arguing that Defendants' motion is a "procedurally

16  improper attempt to cast a summary judgment motion as a motion to

17  dismiss" which misuses judicially noticed material.  Opp'n at 1-

18  9.  This characterization of the motion is inaccurate.  See

19  generally Mot.; see also Reply 1-2.  Further, the Court need not

20  wait until a later stage of the case to resolve Plaintiff's

21  claims.  Constitutional claims — both facial and as-applied

22  challenges — are subject to dismissal under Rule 12(b)(6) if the

23  alleged facts fail to state a claim.  See O'Brien v. Welty, 818

24  F.3d 920, 929-32 (9th Cir. 2016).

25       Finally, this Court is well-aware of the "bed-rock

26  principles" governing motions to dismiss that Plaintiff

27  emphasizes in its brief: "that the factual allegations in a

28  complaint are to be taken as true, that such allegations must be

1   construed in a light most favorable to plaintiff . . . and that

2   the Court should not engage in premature fact-finding in

3   considering a motion to dismiss but instead should constrain its

4   review to the legal sufficiency of the pleading."  Opp'n at 1.

5        As explained below, applying these familiar standard to the

6   case at bar, the Court finds Plaintiff has not stated a claim.

7   In reaching this conclusion, the Court focuses on the allegations

8   in the complaint, not on Defendants' judicially noticed exhibits

9   – which, to repeat, the Court takes notice only of their

10  existence not their substance including any disputed facts within

11  them.  See Lee, 250 F.3d at 690; see also Gish, 2020 WL 1979970

12  at *2.

13            1.   Substantive Due Process Claim

14       Plaintiff first brings a substantive due process claim.

15  Compl. ¶¶ 63-69.  Plaintiff alleges the Blueprint for a Safer

16  Economy and the Regional Orders "have had a disparate impact on

17  Plaintiff and have unfairly targeted Plaintiff's business,

18  specifically their ability to earn a living by conducting their

19  nail, hair, skincare services, despite the total lack of

20  scientific evidence or data to support the implementation of the

21  Orders as applied to Plaintiff."  Id. ¶ 66.  As such, Plaintiff

22  has been deprived of "constitutionally protected liberties and

23  rights."  Id.  Further, Plaintiff alleges "the disparity in

24  exemptions . . . is causally related to state officials, such as

25  Newsom, supporting their campaign donors at the expense of small

26  businesses and has nothing to do with science and data."  Id. ¶

27  52; see also Opp'n at 9 (referring the Court to ¶ 52).

28       "Substantive due process cases typically apply strict

9

scrutiny in the case of a fundamental right and rational basis review in all other cases." Witt v. Dep't of Air Force, 527 F.3d 806, 817 (9th Cir. 2008). Fundamental rights are those "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Washington v. Glucksberg, 521 U.S. 702, 720–21 (1997) (internal quotation marks and citations omitted).

As Defendants argue, "temporary restrictions on how Plaintiff may serve customers at a hair salon do not implicate fundamental rights that would call for heightened scrutiny." Mot. at 6. Neither the Supreme Court nor the Ninth Circuit has ever held that the right to work or pursue a business enterprise is fundamental right entitled to heightened constitutional scrutiny. Sagana v. Tenorio, 384 F.3d 731, 743 (9th Cir. 2004). Indeed, the Ninth Circuit has recently confirmed that this is not a fundamental right and the proper level of review for this type of claim is rational basis. See Slidewaters LLC v. Washington State Dep't of Lab. & Indus., No. 20-35634, 2021 WL 2836630 at *7 (9th Cir. July 8, 2021) (instructing "the right to pursue a common calling is not considered a fundamental right" and the "proper test for judging the constitutionality of statutes regulating economic activity is whether the legislation bears a rational relationship to a legitimate state interest"); see also Tandon v. Newsom, 992 F.3d 916, 930 (9th Cir. March 30, 2021) ("We have 'never held that the right to pursue work is a fundamental right,' and, as such, the district court likely did not err in applying rational basis review to their due process

1    claims.")  As such, the Court finds no fundamental right is at
2    stake and rational basis review applies.

3        The "judicial review which applies to laws infringing on
4    nonfundamental rights [is] a very narrow one" and is satisfied if
5    the Government "could have had a legitimate reason for acting as
6    it did."  Sagana, 384 F.3d at 743.  "Under rational-basis review,
7    '[t]he burden falls on the party seeking to disprove the
8    rationality of the relationship between the classification and
9    the purpose.'"  United States v. Navarro, 800 F.3d 1104, 1113
10   (9th Cir. 2015).

11       Here, Plaintiff insists it has "sufficiently disproved the
12   rationality" of the Orders.  Opp'n at 10.  The Court does not
13   agree.  To the contrary, the challenged Orders easily meet the
14   rational basis standard: the Orders were enacted for the
15   legitimate purpose of curbing the spread of COVID-19 and are
16   rationally related to that purpose because the Orders reduce the
17   number of people from different households mixing indoors where
18   the spread of COVID-19 occurs most readily.  Accord Disbar Corp.
19   v. Newsom, No. 2:20-cv—02473-TLN, 2020 WL 7624950 at *4 (E.D.
20   Cal. Dec. 22, 2020) (applying rational basis review and finding
21   salon and other plaintiff businesses were unlikely to succeed on
22   substantive due process challenge in similar COVID-19
23   constitutional challenge); Pro. Beauty Fed'n of California v.
24   Newsom, No. 20-cv-04275-RGK, 2020 WL 3056126 at *6 (C.D. Cal.
25   June 8, 2020).

26       Lastly, the Court agrees with Defendant that Plaintiff's
27   Addison Rae allegations, see Opp'n at 11 (referring the Court to
28   Addison Rae allegations at ¶ 49 of the complaint), do not affect

                                   11

1  the rational basis analysis.  See Reply at 4.  Under rational

2  basis review, it is "entirely irrelevant . . . whether the

3  conceived reason for the challenged distinction actually

4  motivated the legislature."  F.C.C. v. Beach Commc'ns, Inc., 508

5  U.S. 307, 315 (1993).  The relevant question is whether the

6  Government "could have had a legitimate reason for acting as it

7  did."  Sagana, 384 F.3d at 743.  As explained above, the Court

8  finds the Government could have.  The inquiry ends there.

9      Plaintiff's substantive due process claim thus fails as a

10  matter of law.  Because no additional fact discovery would alter

11  this conclusion, Plaintiff's first claim is dismissed with

12  prejudice.  See Deveraturda v. Globe Aviation Sec. Servs., 454

13  F.3d 1043, 1046 (9th Cir. 2006) (explaining a district court need

14  not grant leave to amend where amendment would be futile).

15          2.  Equal Protection Claim

16      Plaintiff next asserts an equal protection claim.  Compl.

17  ¶¶ 70-77.  Plaintiff alleges that "Defendants intentionally and

18  arbitrarily categorized individuals, businesses and conduct as

19  either 'essential' or 'non-essential.'"  Id. ¶ 72.  According to

20  Plaintiff, these classifications of "essential" and

21  "nonessential" violated the Equal Protection Clause.  Opp'n at 9-

22  10.

23      The Equal Protection Clause prohibits the government from

24  drawing arbitrary distinctions between individuals based solely

25  on differences that are irrelevant to a legitimate governmental

26  objective.  See City of Cleburne, Tex. v. Cleburne Living Ctr.,

27  473 U.S. 432, 446 (1985).  The first step in an equal protection

28  analysis is to "identify the state's classification of groups."

1   <u>Gallinger v. Becerra</u>, 898 F.3d 1012, 1016 (9th Cir. 2018)

2   (internal citation omitted).  The next step is to "look for a

3   control group composed of individuals who are similarly situated"

4   and "if the two groups are similarly situated, then determine the

5   appropriate level of scrutiny."  <u>Id.</u>  Plaintiff bears the burden

6   of pleading that others are similarly situated and how they are

7   similarly situated.  <u>Washington v. White</u>, No. 18-cv-00333-WHO,

8   2018 WL 2287676 at *7 (N.D. Cal. May 18, 2018)(internal citation

9   omitted).

10       Defendants first contend that Plaintiff has not plausibly

11   alleged that "essential" and "non-essential" businesses are

12   similarly situated groups.  Mot. at 9.  Defendants further

13   contend that even if Plaintiff had identified a similarly

14   situated group, its equal protection claim would still fail under

15   rational basis review.  <u>Id.</u> at 10-11.

16       As an initial matter, the Court agrees with Defendants that

17   rational basis review is the applicable standard because "no

18   suspect class is involved and no fundamental right is burdened."

19   <u>Kahawaiolaa v. Norton</u>, 386 F.3d 1271, 1277–78 (9th Cir. 2004)

20   (internal citation omitted).  Specifically, as the Ninth Circuit

21   has recently reiterated, the right to pursue a business

22   enterprise is not a fundamental right, and business owners,

23   including salon hair owners, are not a "suspect class."  <u>See</u>

24   <u>Slidewaters LLC</u>, 2021 WL 2836630 at *7; <u>see also</u> <u>Tandon</u>, 992 F.3d

25   at 930 ("[B]usiness owners are not a suspect class, and the

26   district court correctly applied rational basis review to their

27   equal protection claims.")  Rational basis review thus applies.

28       "Courts are compelled under rational-basis review to accept

13

1  a legislature's generalizations even when there is an imperfect

2  fit between means and ends."  <u>Heller v. Doe by Doe</u>, 509 U.S. 312,

3  321 (1993).  Under rational basis review, the "burden is on the

4  one attacking the legislative arrangement to negative every

5  conceivable basis which might support it."  <u>Armour v. City of</u>

6  <u>Indianapolis, Ind.</u>, 566 U.S. 673, 681 (2012) (internal citations

7  omitted).

8      Here, Plaintiff has not met its burden.  At least one

9  conceivable basis for the non-essential designation is that

10  limiting activity at non-essential businesses, such as

11  Plaintiff's, would curb the spread of COVID-19 by limiting the

12  interactions indoors between individuals from different

13  households.  <u>See</u> <u>Pro. Beauty Fed'n of California v. Newsom</u>, No.

14  2:20-CV-04275-RGK-AS, 2020 WL 3056126, at *7 (C.D. Cal. June 8,

15  2020) ("The Stay at Home Order has a legitimate purpose—namely,

16  curbing the spread of COVID-19.  Additionally, the challenged

17  designations between essential and non-essential businesses

18  promote that purpose.")  Thus, the challenged essential/non-

19  essential classifications survive rational basis review.

20      Plaintiff's equal protection claim fails as a matter of law.

21  Finding amendment would be futile, the Court dismisses

22  Plaintiff's second claim with prejudice.  <u>See</u> <u>Deveraturda</u>, 454

23  F.3d at 1046.

24          3.  <u>Procedural Due Process Claim</u>

25      Plaintiff's third claim is a procedural due process claim.

26  Compl. ¶¶ 78-101.  In particular, Plaintiff complains that the

27  Orders provide "no opportunity for a hearing, no appeal, and no

28  reconsideration" and that its "rights to freely operate its

1  lawful businesses and earn a living were stripped away without so

2  much as a hearing." Opp'n at 12.

3      The Ninth Circuit, however, has specifically rejected the

4  notion that the Due Process Clause requires this type of process

5  before enacting and enforcing laws of general applicability.

6  Halverson v. Skagit County, 42 F.3d 1257, 1260-61 (9th Cir.

7  1994). "[G]overnmental decisions . . . not directed at one or a

8  few individuals do not give rise to the constitutional procedural

9  due process requirements of individual notice and hearing;

10  general notice as provided by law is sufficient." Id. at 1261.

11      Plaintiff does not dispute that the challenged Orders

12  applied to large numbers of individuals and businesses across

13  California. See Opp'n. Yet, Plaintiff fails to address

14  Halverson. Id. Instead, Plaintiff cites to several cases

15  involving government action directed toward an individual, not

16  orders of general applicability. Id. at 12-13 (citing to

17  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985);

18  Zinermon v. Burch, 494 U.S. 113 (1990); and Bd. of Regents of

19  State Colleges v. Roth, 408 U.S. 564(1972)). As these cases are

20  readily distinguishable, they do not save Plaintiff's claim.

21      Nor does Plaintiff's additional argument based on California

22  law save its procedural due process claim. Opp'n at 13; see also

23  Compl. ¶ 84. Specifically, Plaintiff argues that "California

24  courts have found that if a local official declared a quarantine,

25  then certain procedures must be followed" and here they were not

26  followed. Opp'n at 13 (citing to Ex parte Martin, 83 Cal. App.

27  2d 164 (1948) and to Cal. Health and Safety Code § 120130(c)).

28  However, this argument is foreclosed by sovereign immunity

15

because Plaintiffs sued Defendants in their official capacities and therefore the lawsuit is de facto against the state which cannot be sued in federal court based on California law.  Reply at 4 (citing to <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 106 (1984)).  Though Defendants raised the sovereign immunity issue in their motion, <u>see</u> Mot. at 11, Plaintiff failed to address it in opposition.  <u>See</u> Opp'n.

In sum, because the challenged Orders are clearly governmental decisions of general applicability that do not target individual salon owners, Plaintiff was not entitled under <u>Halverson</u> to individualized notice or the right to be heard. Further, Plaintiff's arguments based on state law are foreclosed under <u>Pennhurst</u>.  Plaintiff's procedural due process claim thus fails as a matter of law.  This claim is dismissed with prejudice as the Court finds amendment would be futile.  <u>See Deveraturda</u>, 454 F.3d at 1046.

4.  <u>Excessive Fines/ Cruel and Unusual Punishment Claim</u>

Plaintiff brings two claims under the Eighth Amendment: an excessive fines and a cruel and unusual punishment claim.  Compl. ¶¶ 102-110.  Plaintiff's theory seems to be that Defendants' Orders cause unemployment among its principals, employees, and independent contractors which in turn inflicts cruel and unusual punishment on those who lose their jobs through massive social, economic, and health costs.  <u>Id.</u> ¶¶ 103-105.  Plaintiff further alleges that as long as the orders remain in place, it remains "subject to criminal cases (i.e. misdemeanor citations and fines), have their business licenses suspended or withdrawn, or have their utilities shut off by the DWP based on the future

16

1   enforcement of the Regional Orders by their local Sheriff's

2   Department."  Id. ¶ 62.  Defendants contend both Eighth Amendment

3   claims fail because Plaintiff has not identified a particular

4   fine or punishment, let alone one that would violate the

5   Constitution.  Mot. at 2, 12-13; Reply at 5.

6       The Eighth Amendment provides: "Excessive bail shall not be

7   required, nor excessive fines imposed, nor cruel and unusual

8   punishments inflicted."  U.S. CONST., amend. VIII.   The

9   excessive fines clause "limits the government's power to extract

10  payments, whether in cash or in kind, as punishment for some

11  offense."  U.S. v. Bajakajian, 524 U.S. 321, 328 (1998) (internal

12  citations omitted).  The government violates this clause when it

13  assesses a fine that is "grossly disproportional to the gravity

14  of a defendant's offense."  Id. at 334.

15      Here, Plaintiff has not plausibly alleged that the

16  government assessed a fine against it or "punished" it in any

17  other way.  Significantly, there is no allegation that the State

18  levied a fine specifically against Plaintiff.  Reply at 5.

19  Rather, Plaintiff raises a novel theory as to how "selective

20  enforcement and arbitrary punishment" – which Plaintiff alleges

21  have taken place - can constitute a fine.  See Opp'n at 15.

22  However, Plaintiff does not bring forward any authority

23  supporting its theory.  Plaintiff's excessive fines claim

24  therefore fails as a matter of law.

25      As to the cruel and unusual punishment clause, the

26  protections of this clause attach only after a person has been

27  convicted of a crime.  Ingraham v. Wright, 430 U.S. 651, 664.

28  Here, Plaintiff does not allege it has been convicted of a crime.

17

1    See Compl.  Additionally, Plaintiff has not brought forward any

2    caselaw supporting the idea that as a corporate entity, it may

3    bring a cruel and unusual punishment claim.  Thus, Plaintiff

4    fails to state a cruel and unusual punishment claim.

5         Both Eighth Amendment claims are dismissed with prejudice

6    because the Court finds amendment would be futile.  See

7    Deveraturda, 454 F.3d at 1046.

8              5.   Freedom of Assembly Claim

9         Plaintiff's final claim is a freedom of assembly claim.

10   Compl. ¶¶ 111-119.  Although Defendants urge the Court to analyze

11   Plaintiff's claim as a Fourteenth Amendment freedom of intimate

12   association claim, see Mot. at 13-14, Plaintiff has clearly pled

13   a First Amendment claim and the Court analyzes it as such.

14        The First Amendment protects individuals from undue

15   interference with their freedom of speech, assembly, and

16   expressive association.  U.S. CONST., amend. I; see also De Jonge

17   v. Oregon, 299 U.S. 353, 364 (1937).  Today, freedom of

18   association and freedom of assembly claims are largely viewed and

19   analyzed as one.  See Roberts v. U.S. Jaycees, 468 U.S. 609, 618

20   (1984).  Parties may only bring this type of claim if they

21   demonstrate that they are asserting their right to associate "for

22   the purpose of engaging in those activities protected by the

23   First Amendment—speech, assembly, petition for the redress of

24   grievances, and the exercise of religion."  Id.

25        Here, Plaintiff has not made that threshold showing.  In

26   fact, there are no allegations that even attempt to identify

27   expressive conduct or speech triggering First Amendment

28   protections.  For instance, Plaintiff does not allege that its

                                 18

1    customers get together to express a particular message.  See

2    Compl.  Plaintiff alleges only that "by denying Plaintiff Pomp

3    Salon the ability to conduct their nail, hair and skin services"

4    Defendants are "in violation of the Freedom of Assembly Clause."

5    Compl. ¶ 114.

6        In addition to the lack of factual allegations identifying

7    any protected speech or conduct, Plaintiff has not brought

8    forward caselaw supporting the idea that the interactions at the

9    salon may trigger First Amendment protection.  See Opp'n.  By

10   contrast, Defendants cite to City of Dallas v. Stanglin, 490 U.S.

11   19 (1989), in support of their argument that Plaintiff's ordinary

12   commercial activities are not protected.  Mot. at 13-14; Reply at

13   5.  In City of Dallas, the Supreme Court held that teenagers'

14   meetings in dance halls were not protected under the First

15   Amendment, explaining that "it is possible to find some kernel of

16   expression in almost every activity a person undertakes – for

17   example, walking down the street or meeting one's friends at a

18   shopping mall - but such a kernel is not sufficient to bring the

19   activity within the protection of the First Amendment."  490 U.S.

20   at 25.  Likewise, here while it might be possible to find a

21   "kernel of expression" in the gathering of Plaintiff's clients'

22   at the salon, that is insufficient to trigger First Amendment

23   protection.

24       Because Plaintiff has not shown that the non-expressive

25   conduct at issue here triggers the protection of the First

26   Amendment protections, rational basis scrutiny applies.  See Calm

27   Ventures LLC v. Newsom, No. CV 20-11501-JFW(PVCx), 2021 WL

28   1502657 at *7 (C.D. Cal. March 25, 2021).  For the same reasons

                                    19

1    discussed above in the analysis of Plaintiff's substantive due
2    process and equal protection claims, the Court finds the Orders
3    clearly survive rational basis review: the Orders were enacted
4    for the legitimate purpose of curbing the spread of COVID-19 and
5    are rationally related to that purpose because the Orders reduce
6    the number of people from different households mixing indoors
7    where the spread of COVID-19 occurs most readily.

8         Accordingly, Plaintiff's fifth claim fails as a matter of
9    law.  This claim is dismissed with prejudice as the Court finds
10   amendment would be futile.  See Deveraturda, 454 F.3d at 1046.

11        E.   Sanctions

12        A violation of the Court's standing order requires the
13   offending counsel (not the client) to pay $50.00 per page over
14   the page limit to the Clerk of Court.  Order re Filing
15   Requirements at 1, ECF No. 4-2.  Moreover, the Court does not
16   consider arguments made past the page limit.  Id.

17        Plaintiff's opposition brief exceeds the Court's page limit
18   by 1.5 pages.  See Opp'n.  Plaintiff's counsel must therefore
19   send a check payable to the Clerk for the Eastern District of
20   California for $75.00 no later than seven days from the date of
21   this Order.

22                         III.   ORDER

23        For the reasons set forth above, the Court GRANTS
24   Defendants' motion to dismiss WITH PREJUDICE.

25        IT IS SO ORDERED.

26   Dated: August 4, 2021

27

28
                                    JOHN A. MENDEZ,
                                    UNITED STATES DISTRICT JUDGE

                                    20